# United States District Court
# Central District of California

| | |
|---|---|
| TONY GLYNN<br><br>        Plaintiff,<br><br>    v.<br><br>MIDLAND FUNDING, LLC; PORTFOLIO RECOVERY ASSOCIATES, LLC; and ANGELIQUE ROSS,<br><br>        Defendants. | Case No. 2:16-cv-02678-ODW-SK<br><br>**ORDER DENYING PORTFOLIO RECOVERY ASSOCIATES, LLC'S MOTION FOR SUMMARY JUDGMENT [42]** |

## I.    INTRODUCTION

Plaintiff Tony Glynn ("Glynn"), appearing *pro se*, brings this suit against Defendants Midland Funding, LLC ("Midland Funding"), Angelique Ross, and Portfolio Recovery Associates, LLC ("PRA") (collectively, "Defendants") and initially alleged claims under the Fair Debt Collections Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and for "negligent willful enablement of fraud," and defamation. (Compl. ¶ 1, ECF No. 1.) PRA is the only remaining Defendant, and before the Court now is PRA's Motion for Summary Judgment on Plaintiff's claim for

violation of the FDCPA, 15 U.S.C. § 1692g(b).  (PRA Mot., ECF No. 42.)  For the reasons discussed below, the Court **DENIES, without prejudice,** PRA's Motion.[1]

## II. BACKGROUND

### A. Procedural Background

On April 19, 2016, Glynn filed his Complaint against Defendants, alleging four causes of action: violation of the FDCPA; violation of the FCRA; negligent willful enablement of fraud; and defamation.  (Compl. ¶ 1.)  However, the Court construed the Complaint to allege six claims,[2] and on February 27, 2017, the Court *sua sponte* dismissed, with leave to amend, claims one through five of Plaintiff's Complaint for failure to state a claim upon which relief could be granted.  (Order 3–7, ECF No. 35.)  The Court also dismissed Plaintiff's claims against Angelique Ross.[3]  (*Id.* at 3.)  Plaintiff did not file an amended complaint.  (*Id.* at 8; ECF No. 40.)  Accordingly, Glynn's only remaining claim alleges that Defendants violated 15 U.S.C. § 1692g(b) by refusing to respond to Plaintiff's request for a validation of his debt.

On March 8, 2018, PRA moved for Summary Judgment on the remaining claim.  (ECF No. 42.)  In response, Glynn filed a Motion for Summary Judgment on

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] As set forth in the Scheduling and Case Management Order, these six claims can be summarized as: (1) violations of the FDCPA and FCRA in communicating to credit reporting bureaus Plaintiff's default; (2) violation of the FDCPA by communicating "false information concerning the alleged debt(s) that Plaintiff 'never' owed to the Defendant(s)" due to the alleged debts never having been validated (Compl. ¶ 7), and violation of FCRA due to Defendants' failure to give Plaintiff notice of his defaults; (3) violation of the FDCPA in using false and deceptive means to collect a debt from Plaintiff; (4) defaming Plaintiff when Defendants communicated delinquent debt accounts and notice for collections; (5) violation of the FDCPA by using unconscionable means to attempt to collect alleged debts, as communicating the defaults to credit reporting bureaus was an impermissible method of attempting to force Plaintiff to pay the debts; and (6) violation of the FDCPA in refusing to respond to Plaintiff's request for validation of the debts.  (*See* ECF No. 35.)

[3] On March 3, 2018, the Court dismissed Defendants Midland Funding and Angelique Ross with prejudice, per the parties' stipulation.  (ECF Nos. 39–40.)

2

March 23, 2018, which the Court construes as Glynn's Opposition to PRA's Motion. (ECF No. 44.)

### B. Factual Background

Glynn is currently incarcerated in Fort Worth, Texas. (*See* ECF No. 28; Compl. ¶ 1(a).) Midland Funding and PRA are debt collection agencies, and Plaintiff alleges that they submitted false and/or misleading information to credit reporting bureaus about Plaintiff's indebtedness, which negatively affected his credit report. (*Id.* ¶¶ 1(b), 4.) Plaintiff claims that upon obtaining a copy of his credit report and discovering that it contained records of defaults for debt accounts with Midland Funding and PRA, he attempted to reach both companies—through a letter entitled "Request for Validation of Debt" ("Validation Letter")—in order to have the debt validated pursuant to the FDCPA. (*Id.* ¶¶ 4–5, 12; Aff. of Maria Marin ("Marin Aff.") Ex. A, ECF No. 42-1.)

In his Validation Letter, dated February 11, 2016, Glynn requested that Defendants provide the information necessary to validate their legal right to collect Glynn's debts, as provided for in the FDCPA. (Compl. ¶ 12; Marin Aff. Ex. A.) According to Glynn's Complaint, the Validation Letter was received by Midland Funding on February 2, 2016, and by PRA on February 24, 2016, but neither company replied. (Compl. ¶¶ 5–6.) PRA does not contest that Glynn sent the Validation Letter in 2016, or that it was received shortly thereafter. (PRA Statement of Undisputed Facts ¶ 2, ECF No. 42-6.) However, PRA claims that it first communicated with Plaintiff regarding the collection of his debt in February 2011, when PRA sent a Notice Letter to Plaintiff's address in Lubbock, Texas. (*Id.* ¶ 3; Marin Aff. ¶ 6, Exs. B, C at 13–14.) PRA made numerous attempts to contact Glynn after sending its initial notice and during the five-year gap preceding Glynn's Validation Letter. (PRA Mot. ¶ 3; Marin Aff. Ex. C at 4–6.) PRA argues that it had no legal duty to respond to the Validation Letter because it was sent nearly five years after PRA first reached out to Glynn about the debt. (PRA Statement of Undisputed Facts ¶ 4; PRA Mot. ¶ 10.)

Plaintiff disputes that the initial communication occurred in 2011, and alleges that PRA never "attempted to contact Glynn at his rightful address" because he has been in prison and "not at any alleged telephone or residence in Lubbock, Texas." (Glynn Mot. ¶ 8, ECF No. 44.)

### III. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).

A party seeking summary judgment bears the initial burden to establish the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party may simply point to portions of pleadings, admissions, answers to interrogatories and depositions which, along with affidavits, show the absence of a genuine issue of material fact. *See id.* If the moving party satisfies its burden, the nonmoving party must produce specific evidence to show that a genuine dispute exists. Fed. R. Civ. P. 56(e). The Court draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory, speculative testimony in affidavits or moving papers is insufficient to meet this burden, or raise genuine issues of fact defeating summary judgment."

*Gustafson v. Experian Info. Sols. Inc.*, No. 2:14-CV-01453-ODW(Ex), 2015 WL 3477071, at *2 (C.D. Cal. June 2, 2015). Therefore,"[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

## IV. DISCUSSION

PRA moves for Summary Judgment on Glynn's only remaining claim for violation of the FDCPA § 1692g(b). To establish an FDCPA violation, there are three threshold requirements:

> (1) the plaintiff targeted by the collection activity must be a 'consumer' as defined in 15 U.S.C. § 1692(a)(3); (2) the defendant must be a 'debt collector' as defined in 15 U.S.C. § 1692(a)(6); and (3) the defendant must have committed some act or omission in violation of the FDCPA.

*Johnson v. CFS II, Inc.*, No. 12-CV-01091-LHK, 2013 WL 1809081, at *4 (N.D. Cal. Apr. 28, 2013). It is undisputed that Glynn is a "consumer" pursuant to section 1692(a)(3). (*See* Compl. ¶ 2.) The second and third requirements remain at issue.

### A. Whether PRA is a "Debt Collector" under the FDCPA

To be subject to an FDCPA claim, the defendant must qualify as a "debt collector." *CFS II, Inc.*, 2013 WL 1809081, at *4. PRA disputes Glynn's contention that PRA qualifies as a debt collector as defined by section 1692(a)(6). (Statement of Response to Plaintiff's Statement of Facts ¶ 3, ECF No. 48; *see* Compl. ¶ 3.) The FDCPA defines a "debt collector" as "any person or entity with the principal purpose of collecting of any debts, 'or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." *Ayvazian v. Moore Law Grp*, No. 2:12-cv-01596-OWD-Ex, 2012 WL 2574947, at *2 (C.D. Cal. Sept. 24, 2012) (citing 15 U.S.C. § 1692(a)(6)). Despite PRA's claim, the evidence PRA provided to the Court supports the conclusion that PRA's principal purpose is collecting debts. (*See* Compl. Ex. A; Marin Aff. Exs. A–C.) Additionally, other federal courts have found PRA to be a debt collector under the FDCPA. *See, e.g.*,

*Newton v. Portfolio Recovery Assocs., LLC*, No. 2:12-CV-698, 2014 WL 340414, at *11 (S.D. Ohio Jan. 30, 2014); *Peterson v. Portfolio Recovery Assocs., LLC*, 430 F. App'x 112, 114 (3d Cir. 2011).

Therefore, PRA must comply with the requirements of 15 U.S.C. § 1692g(b) because it qualifies as a debt collector. Thus, the only remaining dispute is whether PRA committed an act or omission in violation of the FDCPA.

**B.     Whether PRA Violated Section 1962g(a)–(b) of the FDCPA**

As a preliminary note, there are several deficiencies in Glynn's papers that leave the Court with little evidence to support Glynn's FDCPA claim. Glynn only attaches his credit report and certified mail receipts to the Complaint (*see* Compl. Exs. A–D), his motion for summary judgment is not properly supported by evidence (*see* Glynn Mot.), and his statement of undisputed facts is laced with argument (*see* Glynn Statement of Undisputed Facts ¶¶ 4, 6, 7, 10.) Typically, mere allegations, without further evidentiary support, are insufficient to create a dispute as to a material fact and defeat summary judgment. *See Gustafson*, 2015 WL 3477071, at *2.

However, considering that Glynn is *pro se*, and currently a prisoner in the custody of the United States, the Court confers leniency. *C.f. Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam)) ("[*P*]*ro se* complaint[s], 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.'"). Glynn submitted a Statement of Undisputed Material Facts (ECF No. 44) that purports to set forth various facts, including his claim that PRA never "attempted to contact Glynn at his rightful address." (Glynn Statement of Undisputed Facts ¶ 8.) Glynn signed this document, but did not sign it under penalty of perjury. (*See id.*) Federal Rule of Civil Procedure 56(c)(1) requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by citing to . . . affidavits or declarations . . . ." "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* 28 U.S.C. § 1746 (setting forth the requirement that declarations be signed under penalty of perjury). Therefore, although Glynn did not comply with the proper procedure, he submitted a signed statement that calls into question whether PRA sent the Validation Letter to the proper address. While alone this may not be sufficient to create a genuinely disputed fact, in conjunction with PRA's failure to lay proper foundation for its process for mailing the Notice Letter, as described below, the Court cannot find that PRA has met its burden on summary judgment.

### 1. *Notice Requirements under the FDCPA*

Under the FDCPA, a debt collector is required to "send the consumer a written notice" ("Notice") of the amount of debt, the name of the creditor to whom the debt is owed, "a statement that unless the consumer, within thirty days after receipt of the [N]otice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by debt collector," and other disclosures set forth in 15 U.S.C. § 1692g(a)(1)–(5). In response, the debtor is allowed to request validation of the debt, so long as the written request is made within thirty days after the receipt of the initial Notice.[4] *See Mahon*, 171 F.3d at 1202. If the debtor requests validation within the thirty days, the debt collector is required to validate the debt pursuant to 15 U.S.C. § 1692g(b). *Id.* If no written request is made within the thirty-day period, "the debt will be assumed to be valid by the debt collector," 15 U.S.C. § 1692g(a)(3), and the "debt collector is under no legal obligation to cease and desist with collection efforts." *Campbell v. Credit Bureau Sys., Inc.*, No. CIVA 08-CV-177-KSF, 2009 WL 211046, at *13 (E.D. Ky. Jan. 27, 2009).

Here, Glynn did not respond to PRA's Notice Letter within the thirty-day period provided in the statute because he did not request validation of his alleged debt until February 2016, nearly five years after the 2011 Notice Letter. (*See* Marin Aff.

---

[4] As discussed in detail below, courts have interpreted the FDCPA not to require actual receipt of the notice by the debtor. *See Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 1999).

Exs. A–B.) He contends that PRA failed to respond and validate the debt, as required by 15 U.S.C. § 1692g(b), and that the Notice Letter was sent to the incorrect address, thereby failing to provide him with proper notice of the debt. (*See* Glynn Statement of Undisputed Facts ¶¶ 1, 5; Glynn Mot. ¶ 8.) For his validation request to have been enforceable, he needed to request it within thirty days of receipt of the Notice Letter from PRA. *See* 15 U.S.C. § 1692g(a)(3). As a result, Glynn's tardy Validation Letter, which he sent nearly five years after PRA claims to have sent him notice of the debt, did not trigger any obligation on the part of PRA to validate the debt pursuant to section 1692g(b). However, because Glynn claims that PRA's Notice Letter was sent to the incorrect address, the Court must evaluate whether a dispute as to this fact is sufficient to defeat summary judgment.

*Mahon v. Credit Bureau of Placer County. Inc.*, where the Ninth Circuit affirmed the grant of summary judgment in favor of the debt collector even though the plaintiffs claimed to have never received Notice of their debt, is instructive on this issue. 171 F.3d at 1201–03. There, the court relied on the plain language of the FDCPA and held that a debt collector need only *send* the Notice of debt to the debtor, "not establish *actual receipt* by the debtor." *Id.* at 1201 (emphasis added). The court reasoned that the explicit language of "section 1692g(a) requires only that Notice be 'sent' by a debt collector."[5] *Id.* The court also relied on the common law Mailbox rule that "proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee." *Id.* (quoting *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992)). The court concluded that there was no genuine dispute as to any material fact because the debt collector complied with section 1692g(a) and sent a notice to the consumer, which was presumptively received shortly thereafter.

---

[5] Although the *Mahon* court stated that the FDCPA only requires that the notice of debt be *sent* to the consumer, 171 F.3d at 1201, section 1692g(3) also requires that consumers send debt collectors a statement "within thirty days after *receipt* of the notice." *See* 15 U.S.C. § 1692g(3) (emphasis added). Therefore, this Court notes that the plain language of the FDCPA seems to, in fact, require some form of receipt, either actual or presumed. *See id.*

8

*Id.* at 1202–03. Accordingly, the decision established that, "[a]bsent evidence to rebut the presumption [of delivery], a debt collector has satisfied the notice requirements of the FDCPA" by showing that it mailed the notice. *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05-CV-1094, 2006 WL 2473004, at *12 (N.D. Ohio Aug. 24, 2006).

PRA's argument, and the case law used to support it, rely heavily on the *Mahon* decision. (PRA Mot. ¶ 9.) That decision, however, is distinguishable from this case because the plaintiffs in *Mahon* did not claim that the Notice was mailed to the incorrect address. 171 F.3d at 1201–03. They only argued that "there must be proof that the debtor received the Notice." *Id.* at 1201. Here, on the other hand, Glynn does not merely allege that he never received the Notice Letter, but states that PRA did not attempt to contact him at his "rightful address." (Glynn Statement of Undisputed Facts ¶ 8.) Therefore, the *Mahon* court did not directly address the issue presented here and "left open the possibility of a different result if the original notice had been returned to [PRA] as undeliverable." *Midland Credit*, 2006 WL 2473004, at *13; *see also Kim v. Gordon*, No. CV-10-1086-HZ, 2011 WL 3299813, at *2 (D. Or. Aug. 2, 2011) ("The Ninth Circuit in *Mahon* did not address the specific issue of whether a notice is 'sent' pursuant to 15 U.S.C. § 1692g(a) when the mailing address omits a particular portion of the debtor's address . . . .").

Despite no requirement for debt collectors to ensure receipt, several courts have interpreted the "to consumer" language in section 1962g(a) to require debt collectors to send the notice letter to the valid and proper address of the consumer. *See, e.g.*, *CFS II, Inc.*, 2013 WL 1809081, at *8–9 ("[S]ome federal courts have recognized that sending a validation notice to an *inaccurate* mailing address does not serve to inform debtors of their rights or meet the requirements set forth under 15 U.S.C. § 1692g(a)."); *Midland Credit*, 2006 WL 2473004, at *12 (quoting 15 U.S.C. § 1692e) ("If debt collectors could satisfy the FDCPA by merely sending validation notices to *any* address, valid or invalid, it would not serve to inform debtors of their rights, and would constitute an 'abusive debt collection practice.'"); *Kim*, 2011 WL

3299813, at *3. One such court noted: "when a written notice is returned as undeliverable, it has not actually been *sent* to the *consumer*." *Midland Credit*, 2006 WL 2473004, at *12 (emphasis in original).

To overcome the Mailbox rule presumption, "a debtor must prove 'by clear and convincing evidence that the mailing was not, in fact, accomplished.'" *Grant v. Unifund CCR Partners*, 842 F. Supp. 2d 1234, 1240 (C.D. Cal. 2012) (citing *In re Bucknum*, 951 F.2d 204, 207 (9th Cir. 1991)). This burden may be met, for example, if Glynn demonstrates that the Notice Letter was sent to the incorrect address and returned to PRA as undeliverable. *See id.* ("If the debt collector knows the validation notice was sent to the wrong address, the debt collector has not complied with the plain language of the statute."). If the presumption is rebutted, "the FDCPA requires additional action by the debt collector to send a notice reasonably calculated to reach the consumer." *Midland Credit*, 20062473004, at *13; *see also CFS II, Inc.*, 2013 WL 1809081, at *9 ("[T]he plain language and purpose of the FDCPA presumably requires additional action by a debt collector if a debt collector otherwise learns that its validation notice was not sent properly to a consumer."). Notably, a debt collector's additional obligation "only applies when the debt collector is aware the first notice was not delivered" and "does not apply where the Post Office does not return the notice, even if the debtor asserts he did not receive notice." *Campbell*, 2009 WL 211046, at *13.

2. *Evidence of Notice*

As discussed above, Glynn claims that PRA did not send the Notice Letter to his "rightful address." (Glynn Statement of Undisputed Facts ¶ 9.) He also refers to his former wife, alluding to the possibility that the Lubbock address was his last known address and where his former wife currently resides. (*Id.* ¶ 9.) PRA, on the other hand, provides the Court with evidence of Glynn's Validation Letter, PRA's Notice Letter, and a detailed record of their attempts to contact Glynn. (*See* Marin Aff. Ex. A–C.) What is missing from PRA's Motion is evidence establishing that

PRA sent the Notice Letter to Glynn's last known address, or that PRA followed any sort of procedure to evaluate whether sending a letter to the address it had on file was reasonably calculated to give notice to the debtor.

Typically, when plaintiffs argue that an incorrect address was used, courts require debt collectors to proffer evidence regarding the procedure in which the notice letter was sent and a declaration stating that it was not returned as undeliverable. *See Campbell*, 2009 WL 211046, at *13 (denying summary judgment because defendant's affidavits did not explicitly state that it relied on the last known address or that it never received notice letters as undeliverable); *cf. Grant*, 842 F. Supp. 2d at 1241 (granting summary judgment because the debt collector provided testimony that its notice letter was sent to plaintiff and not returned as undeliverable); *Rogozinski v. NCO Fin. Sys., Inc.*, No. CIV.A. 11-2594, 2012 WL 5287896, at *4 (E.D. Pa. Oct. 25, 2012) (finding that the testimony of defendant's Senior Vice President, who explained that the plaintiff's address was found using a Lexus Nexus credit search, was "sufficient for Defendants to meet their burden of invoking the mailbox rule and raise a rebuttable presumption"); *Newton*, 2014 WL 340414, at *11 ("When Plaintiff suggests that the notice should have been sent to another address, he does not dispute the evidence submitted by Defendant demonstrating that the notice was sent to his wife's last known address and that the notice was not returned.").

Here, however, PRA has provided neither. While PRA produces an affidavit from Maria Marin, the custodian of records at PRA, her testimony only supports that the records were made and kept "in accordance with the regular practice of PRA." (Marin Aff. ¶ 4.) While Marin lays foundation for the letters as business records, she does not speak to the procedures at the time of mailing, leaving the record silent as to whether the 2011 Notice Letter was returned as undeliverable, how Glynn's address was ascertained, and what mailing procedures were followed. PRA's failure to address Glynn's contention that PRA was relying on an incorrect address and telephone number also raises concern. Ultimately, the uncertainty as to whether PRA

11

knowingly sent the initial Notice to an incorrect address could affect the outcome of the case, and therefore, creates a triable issue as to a material fact. *See Liberty Lobby*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

Without this information, Court is unable to grant PRA's Motion for Summary Judgment. *See Kimmel v. Cavalry Portfolio Servs.*, LLC, No.10-680, 2011 WL 3204841, at *5 (E.D. Pa. July 28, 2011) (denying summary judgment because there was insufficient evidence to create a presumption of delivery because the affiant had no "personal knowledge of the mailing procedures" and "failed to provide adequate evidence concerning [the debt collector's] customary mailing practices").

Accordingly, the Court **DENIES, without prejudice,** PRA's Motion for Summary Judgment. PRA may file a renewed motion and introduce evidence concerning its methods for ascertaining Glynn's last known address and whether it was put on notice of Glynn's incorrect address after sending the initial Notice Letter. To the extent Glynn wishes to oppose PRA's motion, he should file a declaration under penalty of perjury, or any other evidence he deems necessary, to support his allegations.

///
///
///
///
///
///
///
///
///

///

///

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES, without prejudice,** PRA's Motion for Summary Judgment. (ECF No. 42.) The Court **ORDERS** PRA to notice a renewed motion, addressing the issues set forth above, for hearing on **June 11, 2018 at 1:30 p.m**. PRA must file its renewed motion on or before **May 9, 2018.** Glynn must file an opposition, if any, on or before **May 16, 2018**, and PRA must file a reply on or before **May 23, 2018**. (C.D. L.R. 7-9, 7-10.) Upon ruling on PRA's renewed motion, the Court will set a trial date, if necessary.

**IT IS SO ORDERED.**

April 27, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**