# United States District Court
# Central District of California

| | |
|---|---|
| TONY GLYNN<br><br>    Plaintiff,<br><br>    v.<br><br>MIDLAND FUNDING, LLC; PORTFOLIO RECOVERY ASSOCIATES, LLC; and ANGELIQUE ROSS,<br><br>    Defendants. | Case No. 2:16-cv-02678-ODW-SK<br><br>**ORDER GRANTING PORTFOLIO RECOVERY ASSOCIATES, LLC'S RENEWED MOTION FOR SUMMARY JUDGMENT [71]** |

## I. INTRODUCTION

Plaintiff Tony Glynn ("Glynn"), appearing *pro se*, brought this suit against Defendants Midland Funding, LLC ("Midland Funding"), Angelique Ross, and Portfolio Recovery Associates, LLC ("PRA") (collectively, "Defendants") and initially alleged claims under the Fair Debt Collections Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and for "[n]egligent willful enablement of fraud," and defamation. (Compl. ¶ 1, ECF No. 1.)

Now, PRA is the only remaining Defendant, and, on March 8, 2018, it moved for summary judgment. (ECF No. 42.) On April 27, 2018, the Court denied PRA's motion for summary judgment without prejudice, and instructed PRA to file a renewed motion that would address the deficiencies noted by the Court. (ECF No. 60.) Before the Court

now is PRA's Renewed Motion for Summary Judgment on Plaintiff's claim for violation of the FDCPA, 15 U.S.C. § 1692g(b). (Renewed Mot. For Summary Judgment ("PRA Mot."), ECF No. 71.) Glynn opposes the Motion. (ECF No. 75.)[1] For the reasons discussed below, the Court **GRANTS**, PRA's Motion.[2]

## II. BACKGROUND

### A. Procedural Background

At the time PRA first moved for summary judgment, Glynn's only remaining claim alleged that PRA violated 15 U.S.C. § 1692g(b) by refusing to respond to Plaintiff's request for a validation of his debt. In its prior Order, the Court denied PRA's Motion for Summary Judgment because it lacked evidence of PRA's procedures for verifying the address to which they sent the Notice Letter,[3] as well as a sworn statement that the letter was not returned as undeliverable. (ECF No. 60.) PRA filed its Renewed Motion for Summary Judgment on May 9, 2018. (PRA Mot., ECF No. 71.) Glynn filed a Reply to PRA's Renewed Motion for Summary Judgment on May 25, which the Court construes as his Opposition ("Opp'n"). (ECF. No. 75.) On June 12, 2018, Glynn also filed a "Motion to Provide Documentary Evidence" ("Evidence"). (ECF No. 78.) The Court construes this as part of his Opposition to PRA's Renewed Motion, and considers the evidence provided in making its decision.

### B. Factual Background

The factual background provided below was taken verbatim from the Court's previous Order, as the facts are identical with the exception of the evidence that has

---

[1] Glynn submitted his opposition on May 25, 2018, after the deadline of May 16, 2018, set by this Court in its previous order. However the Court accepts Glynn's opposition because he is incarcerated and provided evidence showing that he did not receive PRA's renewed motion until May 22, 2018. (Opp'n. ECF No. 75.)

[2] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[3] The Court previously discussed the term "Notice Letter," which means the letter a debt collector must send a debtor pursuant to the Fair Debt Collection Practices Act.

been submitted as part of the renewed Motion for Summary Judgment, and Glynn's Opposition.

Glynn is currently incarcerated in Fort Worth, Texas. (*See* ECF No. 28; Compl. ¶ 1(a).) Midland Funding and PRA are debt collection agencies, and Plaintiff alleges that they submitted false and/or misleading information to credit reporting bureaus about Plaintiff's indebtedness, which negatively affected his credit report. (Compl. ¶¶ 1(b), 4.) Plaintiff claims that upon obtaining a copy of his credit report and discovering that it contained records of defaults for debt accounts with Midland Funding and PRA, he attempted to reach both companies—through a letter entitled "Request for Validation of Debt" ("Validation Letter")—in order to have the debt validated pursuant to the FDCPA. (*Id.* ¶¶ 4–5, 12; Aff. of Maria Marin ("Marin Aff.") Ex. A, ECF No. 42-1.)

In his Validation Letter, dated February 11, 2016, Glynn requested that Defendants provide the information necessary to validate their legal right to collect Glynn's debts, as provided for in the FDCPA. (Compl. ¶ 12; Marin Aff. Ex. A.) According to Glynn's Complaint, the Validation Letter was received by Midland Funding on February 2, 2016, and by PRA on February 24, 2016, but neither company replied. (Compl. ¶¶ 5–6.) PRA does not contest that Glynn sent the Validation Letter in 2016, or that it was received shortly thereafter. (PRA Statement of Undisputed Facts ¶ 2, ECF No. 42-6.) However, PRA claims that it first communicated with Plaintiff regarding the collection of his debt in February 2011, when PRA sent a Notice Letter to Plaintiff's address in Lubbock, Texas. (*Id.* ¶ 3; Marin Aff. ¶ 6, Exs. B, C at 13–14.) PRA made numerous attempts to contact Glynn after sending its initial notice and during the five-year gap preceding Glynn's Validation Letter. (PRA Mot. ¶ 3; Marin Aff. Ex. C at 4–6.) PRA argues that it had no legal duty to respond to the Validation Letter because it was sent nearly five years after PRA first reached out to Glynn about the debt. (PRA Statement of Undisputed Facts ¶ 4; PRA Mot. ¶ 10.)

Plaintiff disputes that the initial communication occurred in 2011, and alleges that PRA never "attempted to contact Glynn at his rightful address" because he has been

in prison and "not at any alleged telephone or residence in Lubbock, Texas." (Glynn Mot. ¶ 8, ECF No. 44.)

To support his allegation that he was in prison at the time of the initial communication, Glynn submitted Sentence Monitoring Computation Data, that shows that he was incarcerated on October 26, 2011, and has been incarcerated ever since. (Evidence, ECF No. 78-1.) PRA also submitted, as part of its Renewed Motion, the affidavit of Meryl Dreano, PRA's Custodian of Records. (PRA Mot., ECF 71-1.) Dreano testifies that the Notice Letter was not returned as undeliverable, and that PRA obtained Glynn's address from the creditor from whom they purchased his account. (*Id.*)

### III. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).

A party seeking summary judgment bears the initial burden to establish the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party may simply point to portions of pleadings, admissions, answers to interrogatories and depositions which, along with affidavits, show the absence of a genuine issue of material fact. *See id.* If the moving party satisfies its burden, the nonmoving party must produce specific evidence to show that a genuine dispute exists. Fed. R. Civ. P. 56(e). The Court draws all inferences in the light most

4

favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory, speculative testimony in affidavits or moving papers is insufficient to meet this burden, or raise genuine issues of fact defeating summary judgment." *Gustafson v. Experian Info. Sols. Inc.*, No. 2:14-CV-01453-ODW(Ex), 2015 WL 3477071, at *2 (C.D. Cal. June 2, 2015). Therefore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

## IV. DISCUSSION

PRA moves for Summary Judgment on Glynn's only remaining claim for violation of the FDCPA § 1692g(b). To establish an FDCPA violation, there are three threshold requirements:

> (1) the plaintiff targeted by the collection activity must be a 'consumer' as defined in 15 U.S.C. § 1692(a)(3); (2) the defendant must be a 'debt collector' as defined in 15 U.S.C. § 1692(a)(6); and (3) the defendant must have committed some act or omission in violation of the FDCPA.

*Johnson v. CFS II, Inc.*, No. 12-CV-01091-LHK, 2013 WL 1809081, at *4 (N.D. Cal. Apr. 28, 2013). It is undisputed that Glynn is a "consumer" pursuant to section 1692(a)(3). (*See* Compl. ¶ 2.) The Court's previous order denying PRA's initial motion for summary judgment established that PRA qualifies as a debt collector. (Order Denying Motion for Summary Judgment 5–6, ECF No. 60.) The third element remains at issue.

### A. Whether PRA Violated Section 1962g(a)–(b) of the FDCPA

The Court here incorporates by reference its discussion of the inadequacies of Glynn's initial evidence, the leniency conferred to him as a *pro se* plaintiff, and the notice requirements imposed by the FDCP. (*Id.* at 6–10.) Under the FDCPA, a debt collector must notify the debtor of certain information in a written notice. *See* 15 U.S.C.

5

§ 1692g(a)(1)–(5). A debtor may respond within 30 days to request a validation of the debt, or dispute the accuracy of the information in the notice. The debtor's failure to do so permits the debt collector to assume the validity of the debt. Here, the only issue for the Court to address is whether PRA provided sufficient evidence that it provided adequate notice to Glynn under the FDCPA.

1. *Evidence of Notice*

As described more thoroughly in the Court's prior Order, where a debtor proves, by clear and convincing evidence, that mailing of the Notice Letter was not accomplished, the burden shifts to the debt collector to "send a notice reasonably calculated to reach the consumer." *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05 CV 1094, 2006 WL 2473004, at *13 (N.D. Ohio Aug. 24, 2006). However, a debt collector's additional obligation "only applies when the debt collector is aware the first notice was not delivered" and "does not apply where the Post Office does not return the notice, even if the debtor asserts he did not receive notice." *Id.*

The Court found that PRA's initial motion for summary judgment lacked evidence that the Notice Letter was not returned as undeliverable, and that it had been mailed to Glynn's last known address. (*Id.* at 11.) Their renewed motion remedies these issues.

Meryl Dreano, PRA's custodian of records, states that PRA sent the first Notice Letter to Glynn in early February 2011, and that the initial letter was not returned as undeliverable. (Affidavit of Meryl Dreano ("Dreano Aff.") ¶ 7, ECF No. 71-1.) Glynn argues that the records provided by PRA do not show that the Notice Letter was sent on February 7, 2011. (Opp'n. 2.) However, the records show that a notification letter for Glynn was processed on February 5, 2011. (Dreano Aff. Ex. A.) This coupled with Dreano's testimony is sufficient evidence that the Notice Letter was sent to Glynn in early February 2011.

In *Grant v. Unifund CCR Partners*, 842 F. Supp. 2d 1234, 1241 (C. D. Cal. 2012), the court granted summary judgment in favor of a debt collector that provided a

declaration, which stated that the notice letter in question was not returned as undeliverable. *Id.* The *Grant* court determined that under the rationale of *Mahon v. Credit Bureau of Placer County. Inc.*, 171 F.3d 1197, 1202 (9th Cir. 2002), and traditional mailbox rules, the letter was presumed received. *Grant*, 842 F. Supp. 2d at 1241. To overcome this presumption, "a debtor must prove 'by clear and convincing evidence that the mailing was not, in fact, accomplished.'" *Id.* (citing *In re Bucknum*, 951 F.2d 207, 207 (9th Cir. 1991).) While Glynn has provided evidence that he was incarcerated at the time the letter was sent, and thus did not reside at the address on the letter, this does not show that the mailing was not accomplished. (Glynn Mot. To Provide Documentary Evidence, ECF No. 78-1.) Dreano testifies the letter was never returned as undeliverable, and Glynn's evidence does not show that PRA knew or should have known that he no longer resided at the address they had on file. Glynn also argues that PRA's records show two letters returned as undeliverable, one in 2011, and one in 2012. (Opp'n. 4.) However, the earlier of the returned letters was returned to PRA on July 11, 2011. (Dreano Aff. Ex. A.) This evidence is insufficient to raise a genuine issue of material fact. The Notice Letter was sent on February 7, 2011, and therefore the 30 day period to dispute the debt afforded to Glynn under § 1692(g)(3) expired in mid-March 2011, four months before the letter was returned to PRA.

Dreano also explains that PRA obtained Glynn's address from the seller from whom they acquired his debt. (Dreano Aff. ¶ 5.) Glynn contends that since he was incarcerated at the time the Notice Letter was sent, PRA did not mail the letter to his rightful address. In *Campbell v. Credit Bureau Systems, Inc.*, No. CIVA 08-CV-177-KSF, 2009 WL 211046, at *12 (E. D. Ky. Jan 27, 2009), the court explained that when, and only when, a notice is returned as undeliverable does a debt collector have an additional obligation to send a new notice reasonably calculated to reach the consumer. *Id.* (citation omitted). As discussed above, Glynn has not met this burden, and PRA was under no obligation to further assure that Glynn received the notice. *See also Mahon*, 171 F.3d at 1201 (holding that "section 1692(g) requires only that a Notice be

'sent' by a debt collector . . . . Nowhere does the statute require receipt of the Notice.") Like in *Mahon*, Dreano states that the Notice Letter was sent, and the records substantiating this were made and kept according to the regular business practices of PRA. (Dreano Aff. ¶¶4–5;) *Mahon*, 171 F.3d at 1201–02 (finding no genuine dispute of material fact where debt collector relied on standard business practices to send the notice letter to debtor).

As a matter of law, Glynn has not produced sufficient evidence to rebut the presumption of delivery of the Notice Letter sent by PRA to his last known address. Therefore he has not raised any genuine issue of material fact, and this Court must **GRANT** PRA's Renewed Motion for Summary Judgment.

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS,** PRA's Renewed Motion for Summary Judgment. (ECF No. 71.) The Court will issue a judgment.

**IT IS SO ORDERED.**

June 29, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**